IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY | : : : : : : : | CIVIL ACTION<br><br>No. 20-937 |
| v. | | |
| INDEPENDENCE BLUE CROSS, LLC | | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                                       **August 26, 2021**

      Plaintiff Atlantic Specialty Insurance brings this action for declaratory relief against Defendant Independence Blue Cross, seeking a coverage determination as to its obligations under the excess insurance policy (Excess Policy) that Atlantic sold to Independence and the underlying insurance policy sold to Independence from which Atlantic's policy follows form (Primary Policy). Independence's counterclaims ask the Court to declare Atlantic's obligations under these two policies include providing coverage for two class actions lawsuits brought against various Blue Cross Blue Shield Plans and the Blue Cross Blue Shield Association (including Independence). The class actions were first consolidated as part of a multi-district litigation (the Antitrust Litigation) and then subsequently separated into two "tracks": providers of healthcare (Providers) and subscribers to the Blue Cross Blue Shield Plans (Subscribers).

      The parties have filed cross-motions for partial judgment on the pleadings. Atlantic seeks a declaration that the Primary Policy's Related Claims provision bars coverage for the Antitrust litigation because both the Provider Track and the Subscriber Track relate to an earlier claim against Independence. Independence's motion asks the Court to dismiss Atlantic's Second Claim for Relief—that the coverage for the Antitrust Litigation is barred by the Primary Policy's Prior and Pending Litigation Exclusion provision—because Independence had continuous coverage

dating back to 2002, before any potentially related claim began. Because the Provider Track in the Antitrust Litigation is excluded from coverage under the Related Claims provision, the Court will grant in part Atlantic's motion. Because the Subscriber Track in the Antitrust Litigation is not barred by the Related Claims provision, the Court will deny the balance of Atlantic's motion. The Court will deny Independence's motion because there are disputed material facts as to the applicable date of the PPL Exclusion, as well as whether Independence maintained continuous coverage.

**BACKGROUND**

In 2012, several class action lawsuits were filed by healthcare providers and subscribers against multiple Blue Cross Blue Shield entities and member plans, including Independence (the Blues), and the Blue Cross Blue Shield Association (the Association), alleging the defendants conspired to leverage their economic power and market dominance to under-compensate healthcare providers for their services and increase healthcare costs to subscribers by coordinating their operations and limiting their activities through restrictions in their trademark licenses, in violation of federal antitrust laws. Several of these actions were consolidated and transferred to the United States District Court for the Northern District of Alabama, creating the underlying MDL litigation (the Antitrust Litigation) styled *In re Blue Cross Blue Shield Antitrust Litigation*, No. 13cv20000-RDP (N.D. Ala.).

The Antitrust Litigation was split into two tracks: the Provider Track and the Subscriber Track. The Provider Track reflects claims brought by physicians and other healthcare providers who render services to those insured under Blue Cross Blue Shield policies. The Subscriber Track aggregates claims brought by persons and businesses that have insurance policies issued by Blue Cross Blue Shield entities.

Prior to the filing of the lawsuits that were later consolidated in the Antitrust Litigation, Independence was a defendant in another class action, *Love v. Blue Cross Blue Shield Assoc.*, No. 03-21296 (S.D. Fla), which was part of an earlier MDL proceeding styled *In re Managed Care Litigation*, No. 1:00-MDL-1334. As in the Antitrust Litigation, the plaintiffs in *Love* alleged the Blues entered into cooperation agreements with each other to maximize their profits, in violation of federal antitrust laws.

Following settlement of the *Love* litigation, Independence was also a defendant in a subsequent action, *Musselman v. Blue Cross Blue Shield of Ala.*, No. 13-20050 (S.D. Fla.), in which provider plaintiffs in the Antitrust Litigation, who were also plaintiffs in the *Love* class and participated in the *Love* settlement, sought a declaration that they could assert their antitrust claims in the Antitrust Litigation despite being releasing parties in the *Love* settlement. In *Musselman*, Independence successfully moved to dismiss, arguing the antitrust claims in the Antitrust Litigation were "Released Claims" under the *Love* settlement.[1]

Independence sought coverage for the Antitrust Litigation from both the Primary Policy and the Excess Policy. The Primary Policy was issued by Allied World. The Excess Policy follows form to the Primary Policy, and it was issued by OneBeacon Insurance Company. Atlantic acquired responsibility for the Excess Policy in 2012. The Primary Policy has both a Prior or

---

[1] The district court granted the motion to dismiss after finding the antitrust claims asserted by the *Musselman* plaintiffs in the MDL action were released by the settlement agreements in the *Love* litigation. The United States Court of Appeals for the Eleventh Circuit affirmed that decision. *See Musselman v. Blue Cross Blue Shield of Ala.*, 684 F. App'x 824 (11th Cir. 2017). The court overseeing the Antitrust Litigation has since reached the same conclusion with respect to the claims brought by the Providers, i.e., that the claims brought by the Providers were related to the *Love* litigation.

Pending Litigation Exclusion provision (PPL Exclusion) and a Related Claims provision. The PPL Exclusion provides, in relevant part:

> (C) The Underwriter shall not pay any Loss, including Defense Expenses, for any Claim:
>
> . . .
>
> (8) based upon, arising out of, resulting from, or in any way involving any fact, circumstance, situation, transaction, event, Wrongful Act or series of facts, circumstances, situations, transactions, events or Wrongful Acts:
>
> > (a) underlying or alleged in any litigation or administrative or regulatory proceeding brought prior to and/or pending as of the Inception Date stated in ITEM 2(a) [June 28, 2012] of the Declarations:
> >
> > > (i) to which any Insured was a party; or
> > >
> > > (ii) with respect to which any Insured, as of the Inception Date, knew that an Insured would be made a party thereto;
> >
> > (b) which was the subject of any notice given prior to the Inception Date under any other policy of insurance or plan or program of self-insurance; or;
> >
> > (c) which was the subject of any Claim made prior to the Inception Date.

The Related Claims provision provides:

> All Related Claims, whenever made, shall be deemed to be a single Claim and shall be deemed to have been first made on the earliest of the following dates:
>
> (1) the date on which the earliest Claim within such Related Claims was received by an Insured; or
>
> (2) the date on which written notice was first given to the Underwriter of a Wrongful Act which subsequently gave rise to any of the Related Claims, regardless of the number and identity of claimants, the number and identity of Insureds involved, or the number and timing of the Related Claims, even if the Related Claims comprising such single Claim were made in more than one Policy Period.

The term "Related Claims" is defined to mean:

> [A]ll Claims for Wrongful Acts based on, arising out of, resulting from, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances situations, transactions or events, whether related logically, causally or in any other way.

4

Atlantic now seeks a declaration of no coverage based upon the Related Claim provision and the PPL Exclusion. Atlantic filed its Complaint on February 18, 2020. Independence filed its Answer with counterclaims on May 6, 2020. The parties filed the instant cross-motions for partial judgment on the pleadings on September 11, 2020. Atlantic's motion seeks a declaration that the Related Claims provision bars coverage for Independence's claims under the Excess Policy. Independence's motion asks this Court to dismiss Atlantic's Second Claim for Relief, that the coverage for the Antitrust Litigation is barred by the PPL Exclusion, because its coverage under the Excess Policy predated the *Love* litigation. The Court heard argument on the motions on October 26, 2020.

**DISCUSSION**

The Court will grant in part and deny in part Atlantic's motion. The Provider Track is excluded by the Related Claims provision, but the Subscriber Track is not. The Court will deny Independence's motion because there are disputed material facts regarding the Excess Policy's inception and whether Independence maintained continuous coverage.

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed. "Judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). The Court must accept all the allegations in the nonmovant's pleadings as true and draw all reasonable inferences in that party's favor. *See Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017). Because interpretation of an insurance policy is a question of law, *see Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005), when the sole issue is the interpretation of a policy, the Court may

address it on a motion for judgment on the pleadings. *See Nautilus Ins. Co. v. 200 Christian St. Partners, LLC*, 363 F. Supp. 3d 559, 563 (E.D. Pa. 2019).

Under Pennsylvania law, "[t]he interpretation of an insurance policy is a question of law." *Kvaerner Metals Civ. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). In interpreting an insurance policy with respect to the existence or nonexistence of coverage, a court must "look first to the terms of the policy which are a manifestation of 'the intent of the parties.'" *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595 (3d Cir. 2009) (citation omitted). "When the language of the policy is clear and unambiguous, [the court must] give effect to that language." *Kvaerner*, 908 A.2d at 897 (quoting *401 Fourth Street v. Investors Ins. Co.*, 879 A.2d 166, 170 (Pa. 2005)). When a provision in the policy is ambiguous, however, the court must construe the policy "in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *Id.* (quoting *401 Fourth Street*, 879 A.2d at 170). "Ambiguity exists where the language of the [policy] is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 159 (3d Cir. 2017) (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).

The Court must next "compare the terms of the policy to the allegations in the underlying claim." *CPB Int'l*, 562 F.3d at 595. An insurer's "duty to defend and indemnify an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage." *Kvaerner*, 908 A.2d at 896 (quoting *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)). In making this determination, the court must take the factual allegations of the underlying complaint against the insured as true and liberally construe those allegations in favor of the insured. *CPB Int'l*, 562 F.3d at 596. Although the insured "bears the burden of

demonstrating that its claim falls within the policy's affirmative grant of coverage," where, as here, "an insurer seeks to disclaim coverage on the basis of a policy exclusion[,] . . . the insurer bears the burden of proving the applicability of the exclusion as an affirmative defense." *Gen. Refractories Co.*, 855 F.3d at 158. Exclusions in an insurance policy "are strictly construed against the insurer." *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998); *see also Mut. Benefit Ins. Co. v. Politsopoulos*, 115 A.3d 844, 852 n.6 (Pa. 2015).

Independence's claims related to the Provider Track of the Antitrust Litigation are excluded by the Related Claims provision because they are related to the claims made in the *Love* litigation. As an initial matter, the Court does not agree with Independence's argument that the Related Claims provision conflicts with the PPL Exclusion, thus rendering it ambiguous and inapplicable. "'[A]n insurance policy must be construed in such a manner as to give effect to all of its provisions.'" *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 258 (3d Cir. 2019) (quoting *Mut. of Omaha Ins. Co. v. Bosses*, 237 A.2d 218, 220 (Pa. 1968)). The PPL Exclusion excludes from coverage claims underlying or alleged in any litigation existing prior to June 28, 2012. By contrast, the Related Claims provision cabins coverage to new claims that are first made during the policy period, regardless of whether the claims relate to prior or pending litigation. That is, the Related Claims provision establishes *whether* a claim is related and *when* the claim is deemed to have been first made. The two provisions thus work together, and do not conflict. *See Rsui Indem. Co. v. Attorney's Title Ins. Fund, Inc.*, No. 13-670, 2016 WL 7042960, at *5 (M.D. Fla. June 6, 2016) (holding PPL Exclusion and Related Claims provisions have "separate and distinct purposes" and "work in harmony").

Having found the Related Claims provision is not ambiguous, the Court must next determine whether the claims in the *Love* litigation are "related" to the Antitrust Litigation. With

respect to the Provider Track claims, the Court finds they are related claims. A claim is related under the Excess Policy when it is "based on, arising out of, resulting from, or in any way involving the same or related facts, circumstances, situations, transactions or events . . . whether related logically, causally or in any other way." Comparing the *Love* litigation to the Antitrust Litigation, it is clear the facts in the Antitrust Litigation are based on, or at the very least involve, the same or related facts from the *Love* litigation. In *Love*, the claims arose based on allegations that the defendants had engaged in a common scheme to systematically deny, delay, and diminish the payments due to the doctor-providers. This scheme was facilitated by the Blues' significant market power. Similarly, in the Provider Track portion of the Antitrust Litigation, the plaintiffs allege the defendants conspired to "suppress competition and to increase their profits by decreasing the rates paid to healthcare providers." Compl. Ex. 7 ¶ 469. Both *Love* and the Provider Track assert the defendants, acting through the Association, conspired to reduce provider reimbursement based on their significant market share and anti-competitive behavior. As a result, there is a substantial overlap between the Provider Track in the Antitrust Litigation and the *Love* litigation. The Provider Track is therefore "based on" and "ar[ose] out of" the same wrongful acts as the *Love* litigation. *See Musselman*, 2013 WL 4496509, at *5-6 (finding the Provider track complaint in the Antitrust Litigation "arises out of" and is "related" to the *Love* litigation), *aff'd*, 684 F. App'x 824 (11th Cir. 2017).

In the *Musselman* litigation, Independence itself drew similar conclusions with respect to the *Love* litigation and the Provider Track's similarity. There, Independence argued the Provider track claims "recycle[] *Love*'s allegations about the Blue Plans' abuses of market power, claiming that Blue Plans have used their market power to force healthcare providers to accept anticompetitive rates and terms . . . ." Compl. Ex. 15 at 42. Independence went on to state "*Love*

involved essentially the same facts, conspiracy, allegations, and harm that are at issue in [the Provider Track]." *Id.* Ex. 13 at 10. The courts in *Musselman* and the Antitrust Litigation agreed, finding the plaintiffs' claims in the Provider Track were released in the *Love* litigation because they arose from conduct by the released parties. *Musselman*, 2013 WL 4496509, at *5-6; *In re Blue Cross Blue Shield Antitrust Litigation*, No. 13cv20000-RDP, 2018 WL 6333563, at *7 (N.D. Ala. Oct. 17, 2018) ("Providers' claims in this MDL fall squarely within the scope of the *Love* releases because they arise from, or are based on, conduct by the Released Parties."). Though those courts were addressing whether the providers' claims were released in the *Love* litigation, the outcome here is no different. This Court therefore joins the courts in *Musselman* and the Antitrust Litigation in finding the Provider claims are related to the *Love* litigation, and thus constitute "related claims" under the Excess Policy.

The Related Claims provision does not exclude Independence's claims related to the Subscriber Track of the Antitrust Litigation. Unlike the Provider Track, the Subscriber Track does not significantly overlap with the *Love* litigation. As noted above, the *Love* litigation involved allegations that the defendants engaged in a common scheme to systematically deny, delay, and diminish the payments due to doctors, i.e., providers. The Subscriber Track, however, involves allegations that the defendants engaged in a common scheme to systematically restrict competition resulting in higher insurance premiums for subscribers. No subscriber was ever involved in, or had claims pending in, the *Love* litigation. Despite both the *Love* litigation and the Subscriber Track basing their claims on Independence's market share, they involve fundamentally different plaintiffs and request different relief. Therefore, the claims in the Subscriber Track are not "based on" and do not "aris[e] from" the claims in the *Love* litigation, and the Related Claims provision

does not bar coverage.[2] *See, e.g.*, *Connect Am. Holdings, LLC v. Arch Ins. Co.*, 174 F. Supp 3d 894 (E.D. Pa. 2016) (finding prior acts exclusion did not bar coverage where prior litigation was based on a trademark and unfair competition scheme through the use of the internet whereas the instant litigation was based on a trademark and unfair competition scheme based on telemarketing); *Lehigh Valley Health Network v. Exec. Risk Indem., Inc.*, No. 99–5916, 2001 WL 21505 (E.D. Pa. Jan. 10, 2001) (finding related claims provision did not bar coverage for defendants where prior suit was based on a doctor's need to meet surgical quotas with the necessary manpower; while the second suit was based on the defendant's alleged scheme to exclude a different doctor from the medical market).[3]

Finally, the Court will deny Independence's motion because there are disputed material facts regarding the applicable date of the PPL Exclusion and whether it provided continuous

---

[2] Atlantic also asserts Independence should be judicially estopped from arguing the *Love* litigation is not related to the Antitrust Litigation because Independence took the opposite position in *Musselman.* A court may impose judicial estoppel only if "(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one . . . asserted in a prior proceeding; (2) the party changed his or her position in bad faith . . . and (3) the use of judicial estoppel is tailored to address the affront to the court's authority." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777–78 (3d Cir. 2001). Because the Court finds the Related Claims provision bars coverage for the Provider Track, the Court need not address the judicial estoppel argument with respect to the Providers. As for the Subscriber Track, Independence's position is neither irreconcilably inconsistent nor is it in bad faith. The *Musselman* litigation, like the *Love* litigation, concerned providers, not subscribers. Independence can therefore consistently argue the *Love* litigation was related to the *Musselman* litigation but not the Subscriber Track of the Antitrust Litigation.

[3] In its briefing and at oral argument, Atlantic points to the fact that Independence has previously acknowledged the Provider Track is related to the Subscriber Track as evidence the Subscriber Track is related to the *Love* litigation. The Court declines to make that leap. Whether both tracks of the Antitrust Litigation are related to *one another* is not dispositive as to whether both tracks *must* relate to the *Love* litigation. *See Lehigh Valley*, 2001 WL 21505, at *8 ("[T]he word related does not encompass every conceivable logical relationship.") (internal quotations omitted). Though there is high-level overlap between the claims in the Subscriber Track and the claims in the *Love* litigation, the Court finds their connection too attenuated to constitute related claims.

10

coverage. Independence argues Atlantic's Second Claim for Relief—which seeks a declaration that the PPL Exclusion bars coverage—must be dismissed. The PPL Exclusion bars coverage for any claims underlying or alleged in any previous or then-ongoing litigation as of June 28, 2012. Within the PPL Exclusion, however, is a provision that changes the applicable date if the policy "is a renewal of one or more policies previously issued by the Underwriter to the Insured Entity," provided the coverage was "in effect, without interruption, for the entire time between the inception date of the first such other policy and the Inception Date of this Policy." Compl. ¶ 137. Independence asserts it had continuous coverage from Atlantic's predecessor in interest, OneBeacon (and related subsidiaries), dating back to June 28, 2002. As evidence for its assertion, Independence attaches to its motion 10 excess policies, dating back to 2002, issued by OneBeacon or Homeland. Because there was continuous coverage predating the *Love* litigation, Independence argues, the PPL Exclusion in the operative Excess Policy cannot bar coverage for the Antitrust Litigation.

There are material facts in dispute that prevent the Court from determining the Excess Policy's inception. First, there is a dispute as to the definition of "Underwriter" within the relevant PPL Exclusion's provision, and whether that can refer to Atlantic, OneBeacon, and Homeland, as well as the Primary Policy's issuer, Allied World. Second, whether each subsequent policy, issued by several different entities depending on the year, may properly be characterized as a "renewal" under the operative PPL Exclusion is a fact the Court cannot resolve at this stage. Further, even if the Court could readily determine that the PPL Exclusion dates back to 2002, there is a material dispute regarding whether an even earlier litigation, *Horvath*, is related to the Antitrust Litigation. At this stage, the Court has insufficient information to determine when the Excess Policy began and whether it was continuous. Independence's motion therefore must be denied.

**CONCLUSION**

The Court will grant in part and deny in part Atlantic's motion. The claims in the Provider track portion of the Antitrust Litigation overlap substantially with the prior claims in the *Love* litigation and are therefore barred from coverage by the Policy's Related Claims provision. In contrast, the claims in the Subscriber Track portion of the Antitrust Litigation are too attenuated from the claims in the *Love* litigation to be barred by the Related Claims provision. The Court will therefore deny Independence's motion because further discovery is needed to determine the appropriate inception date of the PPL Exclusion.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.